UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| AIRBNB, INC. and PATRICE PERILLO,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF BILOXI,<br><br>Defendant. | Case No. 1:25cv333 TBM-RPM |

COMPLAINT

Plaintiffs Airbnb, Inc. ("Airbnb") and Patrice Perillo ("Perillo"), by the undersigned attorneys, bring this action against Defendant, the City of Biloxi, Mississippi ("Biloxi"), and allege the following on information and belief.

NATURE OF THE ACTION

1. This case involves a conspiracy to take over local government processes for the benefit of a private trade association and its members, in stark violation of federal and state antitrust laws.

2. There is a range of activities that trade associations can lawfully undertake. One thing they are not permitted to do, however, is to hijack local regulations to choose who will and will not be allowed to compete with their members.

3. That unlawful conduct is what has happened here. The Mississippi Hotel & Lodging Association ("HLA") has entered into a conspiracy with the local government of Biloxi to severely restrict short-term rentals ("STRs"), raising its members' profits but harming consumers and communities in Biloxi.

4. STRs offer a potent form of competition for the Hotel & Lodging Association's members. An extensive body of social science literature establishes that when STRs are free to compete, incumbent hotels lose the ability to charge excessively high prices. Admissions by participants in the hotel industry confirm that understanding. The presence of STRs enhances consumer choice, lowers hotel room costs (including for consumers who never stay at STRs), and brings an array of other benefits to consumers, homeowners, and communities. In other words, STRs broadly benefit everyone – except incumbent hotel interests.

5. Rather than compete fairly against STRs, Biloxi's incumbents conspired with Biloxi to block STRs from competing in the first place. Through its conspiracy with Biloxi, the HLA engineered restrictions prohibiting STRs from operating at all in large swaths of the city and severely constraining them in the remainder. On top of that, the HLA wrote itself into the regulatory process, giving it unprecedented visibility into the potential competition faced by its members.

6. This conspiracy – an agreement between Biloxi and a private trade association to restrict competition – is illegal under the federal and Mississippi antitrust laws. Plaintiffs Airbnb and Perillo bring this lawsuit to end the unlawful conspiracy between Biloxi and its hotel trade association and to restore the benefits of competition in Biloxi's short-term lodging market.

**PARTIES**

7. Plaintiff Airbnb is a Delaware corporation that is headquartered in San Francisco, California.

8. Airbnb maintains a website and mobile applications that provide access to an online marketplace for people to list, explore, and book both short-term and long-term accommodations. With an Airbnb account, a host seeking to rent their property may create a

rental listing, and a guest seeking a rental may request to book a property.  Airbnb allows hosts like Plaintiff Perillo to share their homes with travelers from around the world and provides those travelers with a diverse array of options for accommodations, to the benefit of hosts, travelers, and Mississippi itself.  For example, in 2024, Airbnb contributed nearly $250 million to Mississippi's gross domestic product ("GDP"), supported 3,800 jobs in the state, and generated $65 million in tax revenue.  *See* Airbnb, *Guest spending boosts US economy by a record $90 billion in 2024* (May 29, 2025), https://news.airbnb.com/economic-impact-2024-us/.  According to a 2024 survey of Airbnb hosts in Mississippi, nearly 40% said hosting on Airbnb allowed them to meet rising costs of living; 65% of Mississippi hosts are women.

9. Unlawful restrictions on STRs, such as those enacted by Biloxi, harm Airbnb both by eliminating potential sources of revenue from would-be hosts who can no longer list STRs on Airbnb's platform and by reducing the range of options available on Airbnb's platform to potential consumers (i.e., guests).

10. Plaintiff Patrice Perillo is an individual.  Perillo is a resident of Mississippi.

11. Perillo moved to Mississippi in 2022 and purchased a home in Biloxi.  Prior to moving to Biloxi, Perillo had offered space in her previous residence in another state as a short-term rental through Airbnb.  Perillo purchased her property in Biloxi with the intent to offer part or all of it as a short-term rental and initially attempted to list it through Airbnb.  In January 2023, however, Biloxi's lead building inspector contacted Perillo and informed her that it was illegal for her to offer short-term rentals of her home.  Perillo would offer part or all of her home as a short-term rental if Biloxi's local ordinances did not prohibit her from doing so, but has not offered it for rentals shorter than 30 days since January 2023 as a result of Biloxi's regulations.

12. Defendant Biloxi is an incorporated township of Mississippi. It is located in Harrison County, Mississippi, along the Gulf Coast. Biloxi has a population of approximately 49,000 and is home to eight "first-class casino resorts."[1] Biloxi is also home to dozens of hotels, including hotels or resorts affiliated with each of the six largest hotel chains in the United States.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over the action pursuant to 15 U.S.C. § 4, 28 U.S.C. § 1331, and 28 U.S.C. § 1367.

14. This Court has personal jurisdiction over Defendant because Defendant is a municipality located within this District.

15. Venue is proper in this District under 28 U.S.C. § 1391 because Defendant is located within this district and because a substantial part of the events or omissions giving rise to the claims alleged herein occurred within this District.

## FACTUAL ALLEGATIONS

### I.   AIRBNB AND SHORT-TERM RENTALS

16. Short-term rentals have been an American tradition since before the Nation's founding.[2] For centuries, Americans have leased their property to guests in search of a temporary abode for work or leisure. This practice is reflected in court precedents describing a robust practice of leasing, as well as in historical and cultural studies describing the widespread practice of hosting guests in one's home for brief periods through short-term leases.

---

[1] https://biloxi.ms.us/visitor-info/casinos/.

[2] *See, e.g.*, Jamila Jefferson-Jones, *Airbnb and the Housing Segment of the Modern "Sharing Economy": Are Short-Term Rental Restrictions an Unconstitutional Taking?*, 42 Hastings Const. L.Q. 557, 561-64 (2015) (detailing the practice of early Americans using their homes to host boarders on a short-term basis); *Pelletreau v. Jackson ex dem. Varick*, 11 Wend. 110, 113-14 (N.Y. Sup. Ct. 1833) (discussing rental property let to tenants beginning around 1782 or 1783); *Herbert v. Wren*, 11 U.S. (7 Cranch) 370, 371 (1813) (describing rents earned from property leased in 1794).

17. In recent years, STRs have become increasingly accessible to travelers thanks to online marketplaces including Airbnb's. With Airbnb's online marketplace, guests can more easily find STRs that suit their needs, and potential hosts can more easily offer STRs with the knowledge that they will be able to find guests for their offerings.

18. The popularity of STRs has significant benefits for consumers and the broader economy. One significant benefit of STRs is that they compete with other forms of short-term lodging, including resorts and hotels. Through that competition, STRs put downward pressure on the prices of incumbent short-term lodging options like hotels, while also pushing those alternatives to improve their quality to remain competitive. The presence of STRs accordingly results in "better accommodations at more reasonable prices."[3]

19. Numerous academic studies confirm that the presence of STRs helps reduce the prices of other short-term lodging alternatives, especially during high-demand special events, and helps promote their quality.[4]

---

[3] Dina Gerdeman, *The Airbnb Effect: Cheaper Rooms For Travelers, Less Revenue For Hotels*, FORBES (Feb. 27, 2018), https://www.forbes.com/sites/hbsworkingknowledge/2018/02/27/the-airbnb-effect-cheaper-rooms-for-travelers-less-revenue-for-hotels/ (quoting Harvard Business School professor Chiara Farronato).

[4] *See*, *e.g.*, Karl E. Schneider & Lida R. Weinstock, Cong. Rsch. Serv., *Short-Term Rental Markets: A Primer* (Feb. 24, 2025), https://www.congress.gov/crs-product/IF12920; Georgios Zervas et al., *The Rise of the Sharing Economy: Estimating the Impact of Airbnb on the Hotel Industry* (Nov. 18, 2016), https://people.bu.edu/zg/publications/airbnb.pdf; Tarik Dogru et al., *Adding evidence to the debate: Quantifying Airbnb's disruptive impact on ten key hotel markets*, 72 Tourism Mgmt. 27-38 (June 2019), *available at* https://www.sciencedirect.com/science/article/abs/pii/S0261517718302772; Tarik Dogru et al., *Investigating the whole picture: Comparing the effects of Airbnb supply and hotel supply on hotel performance across the United States*, 79 Tourism Mgmt. No. 104094 (Aug. 2020), *available at* https://www.sciencedirect.com/science/article/abs/pii/S0261517720300200; Chiara Farronato & Andrey Fradkin, *The Welfare Effects of Peer Entry in the Accommodation Market: The Case of Airbnb*, NBER Working Paper 24361 (Feb. 2018), https://www.nber.org/system/files/working_papers/w24361/w24361.pdf.

20. STRs bring procompetitive benefits apart from keeping hotel prices down. For example, they can increase consumer choice by offering unique amenities that are not typically found in hotels, such as kitchens, laundry facilities, or larger multi-room spaces, and can thereby attract guests who might otherwise choose not to travel at all, such as families with young children.[5] Similarly, STRs can offer flexible housing options for people who might need it, such as families whose relatives are in the military or in health care facilities, disaster victims, and essential workers.

21. These benefits accrue to consumers. One academic article estimated that in ten major U.S. cities, "consumer surplus," that is, the improvement in consumer welfare from having more options at lower prices, "would decrease by $305 million" in one year without Airbnb.[6]

22. STRs benefit property owners as well. STRs can help make property ownership a reality for Americans who otherwise could not afford it, by letting property owners generate income to offset some of their housing costs.[7] They can also allow property owners to put their

---

[5] *See* Chiara Farronato & Andrey Fradkin, *The Welfare Effects of Peer Entry in the Accommodation Market: The Case of Airbnb*, NBER Working Paper 24361, at 30-31 (Feb. 2018), https://www.nber.org/system/files/working_papers/w24361/w24361.pdf; Rodney W. Caldicott et al., *Airbnb – exploring triple bottom line impacts on community*, 14 Int'l J. Culture, Tourism & Hospitality Rsch. 205-223 (Mar. 2020), *available at* https://scispace.com/papers/airbnb-exploring-triple-bottom-line-impacts-on-community-2w52s20vtx; Daniel Guttentag et al., *Why Tourists Choose Airbnb: A Motivation-Based Segmentation Study*, 57 J. Travel Rsch. 342-359 (Mar. 2018), *available at* https://journals.sagepub.com/doi/abs/10.1177/0047287517696980.

[6] *See* Chiara Farronato & Andrey Fradkin, *The Welfare Effects of Peer Entry: The Case of Airbnb and the Accommodation Industry*, 112 Am. Econ. Rev. 1782, 1784-85 (June 2022).

[7] *See*, *e.g.*, Airbnb, *Airbnb Economic Impact & Housing Report: Los Angeles Metro* at 3 (2024), https://news.airbnb.com/wp-content/uploads/sites/4/2024/05/airbnb-los-angeles-economic-impact-report-2023.pdf; Bay Area Council Econ. Inst., *Solving the Housing Affordability Crisis: How Policies Change the Number of San Francisco Households Burdened by Housing Costs* (Oct. 2016), https://www.bayareaeconomy.org/files/pdf/BACEI_Housing_10_2016.pdf; Billie Ann Brotman, *Portland ordinances: tiny home and short-term rental permits*, 14 Int'l J. Hous. Mkts. & Analysis 124-136 (Feb. 2021), *available at* https://www.emerald.com/insight/content/doi/10.1108/ijhma-02-2020-0012/full/html.

land to productive use and to unlock the full value of their property, creating opportunities for homeownership and economic freedom that would otherwise be unreachable for countless people.

23. Plaintiff Perillo's experience illustrates the importance of these benefits. Perillo purchased her home in Biloxi with the intent to offer part or all of it as a STR to help defray her costs and generate extra income. Because she is unable to do so, however, she has been unable to tap the value of her home to generate extra income through STRs.

24. STRs also bring significant benefits to their broader communities. They contribute to job growth and local tax revenues by helping to attract tourists and tourism dollars, in addition to direct taxes and fees.[8] Further, STRs can assist in disaster relief – as Biloxi itself experienced, when Airbnb worked with hosts in and around the Gulf Coast to offer free stays for

---

[8] *See, e.g.*, Karl E. Schneider & Lida R. Weinstock, Cong. Rsch. Serv., *Short-Term Rental Markets: A Primer* at 2 (Feb. 24, 2025), https://www.congress.gov/crs-product/IF12920; *see also* Airbnb, *New report finds NYC's short-term rental law takes toll on outer boroughs* (Nov. 11, 2024), https://news.airbnb.com/new-report-finds-nycs-short-term-rental-law-takes-toll-on-outer-boroughs/; Charles River Assocs., *Special Interests vs. the Public Interest: The Cost of STR Restrictions on Households, Cities, and Visitors* at 16-17, 20-21 (Dec. 20, 2024), https://news.airbnb.com/wp-content/uploads/sites/4/2025/05/The-Costs-of-STR-Restrictions.pdf; Suman Basuroy et al., *Estimating the impact of Airbnb on the local economy: Evidence from the restaurant industry* (Oct. 16, 2022), *available at* https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3516983; Tarik Dogru et al., *The Airbnb paradox: Positive employment effects in the hospitality industry*, 77 Tourism Mgmt. No. 104001 (Apr. 2020), *available at* https://www.sciencedirect.com/science/article/abs/pii/S0261517719301992; Mohammed Alyakoob & Mohammad Rahman, *Airbnb: Is It a Curse or a Blessing for Restaurant Employment* (2018), *in* Proceedings of the International Conference on Information Systems – Bridging the Internet of People, Data, and Things, ICIS 2018, San Francisco, CA, USA, December 13-16, 2018, *available at* https://dblp.org/db/conf/icis/icis2018.html#AlyakoobR18; Kloninger & Sims Consulting LLC, *State of Hawai'i and Maui Economic and Fiscal Impacts of the Short-Term Rental Industry* (June 12, 2024), https://traveltech.org/wp-content/uploads/2024/06/TravelTech-Maui-6-12-24.pdf; RRC Associates, *Western Mountain Resort Alliance: Economic & Workforce Housing Impacts of Short-Term Rentals* (Mar. 27, 2024), https://resort-alliance.com/wp-content/uploads/2024/04/WMRA-AZ-Presentation-3-27-2024.pdf; Airbnb, *Airbnb Economic Impact & Housing Report: Los Angeles Metro* (2024), https://news.airbnb.com/wp-content/uploads/sites/4/2024/05/airbnb-los-angeles-economic-impact-report-2023.pdf.

people displaced by major floods in Louisiana in August of 2016.[9] Airbnb likewise offered free stays in the Gulf region for relief workers, evacuees, and hurricane victims in the wake of hurricanes Harvey and Irma in 2017 and hurricane Michael in 2018, to name just a few examples. In 2025, Airbnb.org partnered with the local 211 (human services) phone line in Mississippi to offer free stays to people displaced by tornadoes in the region, and with the United Way of the Capital Area to offer free stays for people impacted by disasters in the region going forward.

25. In recent years, STRs have gained popularity nationwide, and they were poised to gain a foothold in Biloxi as well. Biloxi's existing STRs, and the potential for future STRs in the city, provided competition for Biloxi's entrenched lodging industry incumbents and promised greater competition in the future. They therefore posed a threat to Biloxi's entrenched short-term lodging industry incumbents.

## II. BILOXI'S CONSPIRACY TO RESTRICT SHORT-TERM RENTALS

26. Industry groups representing the interests of incumbent hotels themselves recognize the procompetitive disciplining effects of STRs. Michael Achenbaum, President of the Gansevoort Hotel Group, once admitted that "[w]e were all incredibly nervous about the long-term effect of what Airbnb was going to do to the market," while also noting that if municipalities restrict STRs, "there should be a consequential increase in revenue" for hotels.[10] Daniel Lessner, CEO and President of LW Hospitality Advisors, similarly confirmed that "[t]he

---

[9] *See, e.g., AirBnB offering places to stay for those displaced by flooding*, KVUE ABC (Aug. 16, 2016), https://www.kvue.com/article/features/producers-picks/airbnb-offering-places-to-stay-for-those-displaced-by-flooding/289-299095427.

[10] Kate King, *U.S.'s Hardest Hit Hotel Market Primed for a Comeback*, WALL ST. J. (Sept. 19, 2023), https://www.wsj.com/real-estate/commercial/u-s-s-hardest-hit-hotel-market-primed-for-a-comeback-f008377c.

notion of Airbnb being available has definitely limited the pricing power of the hotel industry."[11] As the Harvard Business Review explained, "[t]he losers [from the existence of STRs] are the hotels that see their revenues and profits decline," even though "the benefits reaped by tourists and hosts vastly outweigh the losses suffered by hotels."[12]

27. Biloxi is no exception to this trend. The introduction of STRs jeopardizes the profits of Biloxi's incumbent short-term lodging industry.

28. Biloxi's incumbent lodging industry members have accordingly conspired with the City of Biloxi to limit or eliminate STRs' ability to compete in Biloxi's short-term lodging market.

29. Biloxi has a strongly established incumbent short-term lodging industry. The city's short-term lodging offerings include properties associated with many of the largest national hotel chains, such as Choice, Hilton, IHG, Wyndham, and others. On its own official website, the government of Biloxi advertises local hotels, providing a link to hotel listings in the city.[13] As of September 2025, that listing reflected 34 "Hotels & Motels" in Biloxi. Below that link, Biloxi's official website also states, "Can't find a room? Call 1-888-388-1006." The HLA operates that phone number, and on its own website advertises that it uses this phone line to "plac[e] thousands of room nights at hotels."

---

[11] Ciara Long, *How, Where And When NYC's Hotel Industry Will Feel The Impacts Of New Airbnb Rules*, BISNOW (Sept. 15, 2023), https://www.bisnow.com/new-york/news/hotel/how-where-and-when-nycs-hotel-industry-will-feel-the-impacts-of-new-airbnb-rules-120678.

[12] Sophie Calder-Wang et al., *What Does Banning Short-Term Rentals Really Accomplish*, HARVARD BUSINESS REVIEW (Feb. 15, 2024), https://hbr.org/2024/02/what-does-banning-short-term-rentals-really-accomplish.

[13] https://biloxi.ms.us/visitor-info/lodging/.

30. Biloxi's incumbent lodging industry has long exerted significant local influence. To take just two examples: Shortly after Hurricane Katrina in 2005, Biloxi's then-mayor A.J. Holloway described the importance of Biloxi's casino resorts and hotels, describing them as "the lifeblood of our local economy" and asking, "[d]o we want such an important economic engine directly in harm's way?" More recently, in his June 30, 2025 inaugural address, current mayor Andrew "FoFo" Gilich stated: "We hope to see expansion in the gaming and hotel markets. Possibly billions more in development in the near future."

31. Working with and for the benefit of the Mississippi Hotel & Lodging Association, a private trade group representing hotel interests in the area, Biloxi has unlawfully attempted to restrain STRs' ability to compete by barring them outright from significant areas of the city and by limiting the number of STRs that can operate in any given area and city-wide.

32. Perhaps the clearest public evidence of the conspiracy between Biloxi and the HLA is the unusual role the HLA has been given through Biloxi's STR regulations. Specifically, Biloxi requires that every STR permit application it receives must be forwarded to the HLA as a matter of course – even though the HLA is a private industry group, not a government agency. Granting such a right to a private organization is highly unusual: on information and belief, no other U.S. municipality has a law vesting a hotel industry trade association with comparable rights. The inclusion of this extraordinary provision in the law is evidence that the HLA and Biloxi have conspired in the adoption and enforcement of STR restrictions.

33. Furthermore, the Biloxi City Council has not articulated any legitimate rationale for its restrictions on STRs or for the unusual role it has granted the HLA. Rather, its actions demonstrate a consistent desire to reduce competition for the benefit of Biloxi's incumbent hotel industry members, which the HLA represents.

34. The conspiracy between Biloxi and the HLA has resulted in two principal sets of unlawful restrictions on STRs in Biloxi.

**A. Ordinance No. 2292**

35. In January 2016, the Biloxi City Council passed Ordinance No. 2292, which sharply restricts STRs' ability to compete in Biloxi.

36. Among other things, Ordinance No. 2292 prohibited STRs from operating in large swaths of the city. The prohibited areas include areas zoned for single-family homes, meaning those homeowners cannot offer STRs of any sort, whether a single room, an accessory dwelling unit, or their entire homes.

37. In areas where STRs were still permitted to operate, Ordinance No. 2292 imposed several other conditions and restrictions on them. These included, among others, a limit of four STRs on any given tax lot, regardless of how many residential units may be located there.

38. Ordinance No. 2292 also required that would-be STR hosts in certain zoning areas in the city apply for and obtain conditional use permits before operating their STRs. It did not set out the standards under which applications for STR permits would be approved or denied.

39. Additionally, Ordinance No. 2292 created a requirement that, "[u]pon accepting any Short-Term Rental application, the City of Biloxi will notify the Hotel & Lodging Association to make them cognizant of the intention of establishing a Short-Term Rental facility at the location offered."

40. Biloxi's STR permit application, attached hereto as Exhibit A, confirms that Biloxi has followed that directive. Indeed, the application treats the HLA as equivalent to legitimate government regulators listed afterward in the same sentence (such as the State Department of Revenue). Specifically, the permit application states, in bold, italicized, and underlined letters: "Upon accepting any Short-Term Rental application, the City of Biloxi will

11

notify the Hotel & Lodging Association, State Department of Revenue, Harrison County Tax assessor to make them cognizant of the intention of establishing a Short-Term Rental facility at the location offered."

41. On information and belief, Biloxi has sent a detailed list of information about STR permit applications to the HLA on a periodic basis for many years. That list includes potentially sensitive personal identifying information of every individual who seeks a permit from Biloxi to operate a short-term rental from his or her home, including the name, STR location, home address (if different), and notes of potential deficiencies like unrenewed business licenses or tax deficiencies. The HLA's Executive Director has referred to the data Biloxi provides it as "vital information."

42. Biloxi has put no restrictions on whether or how the HLA may use that sensitive "vital information."

43. These restrictions on STRs, and the role in the permitting process granted to the HLA, did not come about by accident. They were the result of the unlawful conspiracy between the HLA and Biloxi to restrict competition against Biloxi's hotel and resort industry.

44. Prior to passing Ordinance No. 2292, the City Council had considered a proposal from Biloxi's Planning Department in December 2015. The Planning Department had proposed to create a large district in which STRs would be permitted as of right, with the explanation that it was "intended to encourage the redevelopment and revitalization of parts of the City of Biloxi" that still had not fully recovered from Hurricane Katrina.

45. The HLA caused the City Council to vote down the Planning Department's proposal on December 1, 2015, in a 4-3 vote.

46. Biloxi's City Council has seven members. One of them, Mr. Kenny Glavan, is the President of the Mississippi Hotel & Lodging Association. He is also an executive with Lodging & Leisure, LLC, which runs multiple hotels in Biloxi. Mr. Glavan describes himself as a "25 year hospitality professional earning Hotel Manager of the Year honors for the State of Mississippi."[14] Mr. Glavan has been associated with some of Biloxi's most prominent hotels (such as Margaritaville Resort Biloxi, White House Hotel Biloxi, Four Points by Sheraton Biloxi, and Watermark Hotel Biloxi).[15]

47. As President of the HLA, Mr. Glavan is responsible for advocating on behalf of Biloxi's short-term lodging industry incumbents, including the hotels that currently operate in Biloxi.

48. Mr. Glavan, acting on behalf of the HLA, has repeatedly made efforts to impose restrictions on STRs through the City Council. Contemporaneous public reporting by the Biloxi Sun Herald noted that his dual role as councilmember and President of the HLA "raised questions about which group Glavan was representing" in connection with those efforts.[16]

---

[14] Councilman Kenny Glavan, FACEBOOK, https://www.facebook.com/p/Councilman-Kenny-Glavan-100057537464356/ ("Details About Councilman Kenny Glavan"); https://biloxi.ms.us/departments/city-council/city-council-ward-6/.

[15] https://www.linkedin.com/in/kenny-glavan-574625ab/; Signature Worldwide, *Four Points by Sheraton Biloxi recognized for great gains by Starwood Hotels thanks to Legendary Hotel Makeover*, HOSPITALITY NET (Dec. 6, 2011), https://www.hospitalitynet.org/news/4054041.html; Christina Garcia, *Hotels filling up with News Year's travelers*, WLOX (Dec. 30, 2013), https://www.wlox.com/story/24323388/hotels-filling-up-with-news-years-travelers/.

[16] John Fitzhugh, *Biloxi Councilman Kenny Glavan leads meeting on short-term rentals*, SUN HERALD (July 31, 2018), https://www.sunherald.com/latest-news/article215847315.html.

Another contemporaneous article in *Reason* asserted that through Mr. Glavan, "the lobbyists literally are the government" in Biloxi.[17]

49. Through Mr. Glavan, the HLA ensured the rejection of the Planning Commission's proposal in December 2015. Mr. Glavan did not recuse himself from that deliberation and vote, nor, on information and belief, from any other City Council action involving STRs. Mr. Glavan was the deciding vote in defeating the Planning Commission's proposal.

50. In January 2016, the City Council revisited the issue of STRs and passed Ordinance No. 2292, which was significantly more restrictive than the December 2015 proposal.

51. Other Biloxi officials have also worked to benefit the HLA. For example, in 2024, Biloxi's lead building inspector, who is responsible for inspecting STRs, learned that VRBO, another STR listing platform that competes with Airbnb and with hotels, was under-collecting local occupancy taxes. It is not clear whether the inspector ever contacted VRBO or the applicable taxing authorities about this issue; he did, however, choose to pass the information along to Linda Hornsby, the Executive Director of the Mississippi Hotel & Lodging Association.

**B. Ordinance No. 2537**

52. In December 2023, the Biloxi City Council passed Ordinance No. 2537. That ordinance became effective in January 2024. Ordinance No. 2537 likewise was the product of Biloxi's unlawful conspiracy with the HLA to restrict competition in Biloxi's short-term lodging market.

---

[17] Eric Boehm, *City Council President Wants Tougher Enforcement of Airbnb. Oh, He's Also President of the State's Hotel Lobby*, REASON (Aug. 2, 2018), https://reason.com/2018/08/02/city-council-president-wants-to-tougher/.

53. Ordinance No. 2537 further restricted the ability of STRs to compete in Biloxi by arbitrarily capping the number of conditional use permits at just 75 for the entire city.

54. By comparison, annual U.S. census estimates indicate that there are approximately 19,000 households in Biloxi. The city is approximately 46.7 square miles in area.

55. On information and belief, Biloxi has never enacted any comparable cap on the number of hotels or hotel rooms in the city.

56. Ordinance No. 2537 was passed by a divided City Council. Mr. Glavan, the HLA's President, again did not recuse from discussing or voting on the ordinance. He ultimately voted with the majority in favor of its passage.

57. The limit of 75 city-wide conditional use permits was set arbitrarily low at the behest of Mr. Glavan and the HLA.

58. The ordinance reached the City Council for a vote after being proposed by Biloxi's Planning Commission; that proposal, in turn, was developed in response to "a recommendation that came from one of the council members." The administrative hearing record does not indicate which council member made that recommendation. The HLA's President Mr. Glavan, however, was the leading proponent of placing limits on STRs.

59. The Planning Commission's proposal had called for allowing 125 permits, a larger number than the City Council ultimately allowed. The Planning Commission's proposal itself was arbitrary: Biloxi's Director of Community Development admitted at the Planning Commission's meeting on the proposal that "there's no reason behind that number."

60. The City Council then arbitrarily reduced the number further, to 75 permits, without explanation, before passing Ordinance No. 2537. Mr. Glavan seconded the motion that lowered this number. He also seconded the motion to pass Ordinance No. 2537.

61. The State of Mississippi has not specifically authorized the anticompetitive conduct by Biloxi at issue here. None of the restrictions on STRs contained in Ordinance No. 2292 or Ordinance No. 2537 were specifically authorized by the State of Mississippi. Nor did the State of Mississippi specifically authorize the involvement of the HLA in municipal regulatory schemes.

62. Neither the State of Mississippi nor Biloxi exercises any meaningful supervision over the conduct of the HLA.

### III.   HARMS TO CONSUMERS AND COMPETITION

63. The conspiracy between Biloxi and the HLA has had the effect of excluding a significant number of STRs from competing against Biloxi's travel lodging industry incumbents.

64. Most significantly, would-be STR hosts in single-family residential areas in Biloxi are now prohibited by law from offering part or all of their homes as STRs, and the number of STR permits available in other areas is capped at a tiny fraction of the city's housing stock. In other words, the conspiracy between Biloxi and the Hotel & Lodging Association has resulted in restricting output in the short-term lodging market in Biloxi.

65. In addition, Biloxi's decision to involve, and its express warning to STR permit applicants that it will involve, the HLA in handling permit applications serves as a deterrent that can prevent would-be STR operators from applying for necessary licenses due to concerns about privacy, social pressure, or unfairness, among other things. The involvement of the HLA in handling permit applications essentially means that every request for a permit will be received by the applicant's would-be competitors.

66. By preventing and restricting would-be competitors from entering the travel lodging market, the conspiracy between Biloxi and the HLA helps maintain higher prices for

16

existing industry incumbents. As a result, consumers face higher prices, less choice, and lower quality offerings than they would without Biloxi's unlawful restrictions against STRs.

67. These effects are not hypothetical. After years of consistent growth in STR listings in Biloxi, Airbnb saw the number of Biloxi STR listings on its platform stagnate. Over the 18 months prior to the effective date of Ordinance No. 2537, from July 2022 to January 2024, the number of listings in Biloxi available on Airbnb's platform increased by 75%, with hundreds of additional listings added. Over the 18 months following its effective date, from January 2024 to July 2025, the number of listings in Biloxi increased by 0%.

68. At the same time, prices for hotel rooms have increased substantially. From 2015 – the last year before Biloxi began implementing its unlawful restrictions – to 2025, average daily rates for hotel rooms in Biloxi increased by more than 50%. That increase is significantly larger than the rate of inflation during the same period.

69. Plaintiff Perillo was also affected directly by Biloxi's unlawful conspiracy. Upon moving to Biloxi, Perillo attempted to offer STRs of her home through Airbnb. In January 2023, however, Biloxi's lead building inspector contacted her to say that it was unlawful for her to do so. Although the lead building inspector initially suggested that he could help Perillo obtain a permit to run a STR, during a subsequent phone call with Perillo, he did not mention the availability of permits at all and simply asserted that Perillo could not legally run a STR. As a result, Perillo has been unable to generate the additional STR income that she would otherwise have been able to receive, and that she had expected to receive when she purchased her home.

### IV.   RELEVANT MARKET

70. The relevant market for the claims in this case is the market for short-term lodging accommodations in Biloxi, Mississippi.

17

71. Biloxi is the relevant geographic market. Short-term lodging offerings outside of Biloxi do not meaningfully limit the prices for short-term lodging offerings in Biloxi. Much of Biloxi is surrounded by water, limiting the availability of geographically convenient alternative lodging options. Consumers do not generally treat short-term lodging offerings outside of Biloxi as reasonably interchangeable with short-term lodging offerings in Biloxi.

72. The relevant product market is the market for short-term lodging, meaning lodging accommodations for under 30 days. This includes lodging options such as hotels, resorts, motels, bed-and-breakfasts, and (at least when they are not unlawfully restricted from competing) STRs. Long-term lodging options of 30 days or more in Biloxi do not meaningfully limit the prices of short-term lodging offerings in Biloxi. Consumers do not generally treat long-term lodging options as reasonably interchangeable with short-term lodging offerings in Biloxi.

73. Biloxi's incumbent hotels and resorts have market power within the relevant market. Today, Biloxi has granted permits to fewer than 500 STRs. In comparison, according to listings on CoastalMississippi.com (to which Biloxi links from its official website), hotels, motels, and resorts in Biloxi offer more than 7,000 rooms, indicating that these incumbent hotels, motels, and resorts account for upwards of 90% of the market.

**FIRST CLAIM FOR RELIEF**
**(Violation of 15 U.S.C. § 1)**

74. Biloxi's restrictions on STRs were created in furtherance of a conspiracy between Biloxi and the HLA to reduce STRs' ability to compete in the short-term lodging market in Biloxi.

75. Those restrictions were designed for the purpose of, and have had the effect of, unreasonably restraining trade in the short-term lodging market in Biloxi.

76. The restrictions affected interstate commerce.

77. Biloxi's ordinances and its enforcement thereof violate the federal antitrust laws.

## SECOND CLAIM FOR RELIEF
### (Violation of Miss. Code Ann. § 75-21-1)

78. The conspiracy between Biloxi and the HLA is inimical to public welfare and has the effect of restraining trade in the short-term lodging market in Biloxi.

79. Biloxi's passage of its ordinances as part of its conspiracy with the HLA was a wholly intrastate transaction, as Biloxi is located entirely within the State of Mississippi. In addition, at least some of the transactions in the relevant market are intrastate in nature.

80. Accordingly, for this and the same reasons set forth above, Biloxi's ordinances and its enforcement are in violation of the antitrust laws of Mississippi.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Airbnb, Inc. and Patrice Perillo pray that the Court enter an order:

1. Declaring that Defendant City of Biloxi's restrictions on STRs, including Ordinance No. 2292 and Ordinance No. 2537, are unlawful restraints on trade;

2. Permanently enjoining Defendant from enforcing its unlawful restrictions on STRs, including Ordinance No. 2292 and Ordinance No. 2537;

3. Awarding Plaintiffs damages and a penalty of $500 per Plaintiff pursuant to Mississippi Code § 75-21-9; and

4. Granting such other relief as the Court deems proper.

Dated: November 12, 2025

Respectfully submitted,

AIRBNB, INC. and PATRICE PERILLO

PHELPS DUNBAR LLP

BY: */s/ Adam Harris*
Adam Harris MS Bar 102955
John P. McMackin MS Bar 105967
2602 13th Street, Suite 300
Gulfport, Mississippi 39501
Telephone: 228 679 1130
Facsimile: 228 679 1131
Email: adam.harris@phelps.com
Email: john.mcmackin@phelps.com

Attorneys for Plaintiffs